1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY HAINES,

                Plaintiff,

      v.

CITY OF CENTRALIA, *et al.*.,

                Defendants.

Cause No. C20-5576RSL

ORDER GRANTING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

      This matter comes before the Court on "Defendants City of Centralia, Centralia Police Department and Chief Nielsen's Motion for Summary Judgment." Dkt. # 11. Plaintiff alleges that he was subjected to a warrantless pretrial alcohol monitoring program and was jailed without hearing or a chance to consult with counsel if the testing showed a positive result. He asserts that defendants acted under color of state law, specifically RCW 46.61.5055 and RCW 36.28A.300, and seeks to recover "[d]amages for each day he was incarcerated; damages for each time he was jailed without a hearing designed to detect and prevent false imprisonments[;] damages for each time he was jailed without any notice to his lawyer, interfering with the fundamental right to counsel of choice; damages for violation of plaintiff's federal constitutional rights; and any other and further relief supported by the pleadings and evidence and approved by

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 1

the court." Dkt. # 16-2 at 2-3.[1] Although plaintiff's complaints do not specify the legal theories under which he seeks the relief requested, the facts alleged arguably state claims under 42 U.S.C. § 1983 for violations of plaintiff's Fourth Amendment right to be free from illegal searches, Fifth Amendment right to due process, and Sixth Amendment right to counsel. Defendants seek summary dismissal of all of these claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose

---

[1] Plaintiff was recently granted leave to file a second amended complaint seeking the relief set forth in the text. Previously, the relief requested included only the first three clauses. *See* Dkt. # 8.

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 2

resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

On November 2, 2016, plaintiff was arrested for driving under the influence. Dkt. # 12 at 10-16. While he was awaiting a hearing, two police officers presented plaintiff with a flyer describing a 24/7 Sobriety Program and told him that he could either participate in the program or wait in jail until his case had been adjudicated. Dkt. # 14-2 at 1. On November 4, 2016, plaintiff signed a participation agreement, agreeing to strictly comply with the requirements of the 24/7 Sobriety Program (including twice daily breath testing at the Centralia Police Department) and to pay the specified user/participation fees. Dkt. # 12 at 18-21. Plaintiff was informed that if there were probable cause to believe he had violated the terms of the participation agreement (including a test result indicating the presence of alcohol), he may be incarcerated. *Id.* On November 8, 2016, City of Centralia Municipal Court Judge James J.M. Buzzard signed an Order Establishing Conditions of Release requiring plaintiff to participate in

---

[2] The Court has considered plaintiff's declaration (Dkt. # 14-2) but has not considered his untimely second "response" (Dkt. # 17-1). Plaintiff's request for leave to file a sur-reply (Dkt. # 17) is DENIED.

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 3

the 24/7 Sobriety Program with twice-per-day alcohol monitoring as a condition of his release. Dkt. # 12 at 23.

Between November 8, 2016, and May 22, 2017, plaintiff was found to be in violation of the 24/7 Sobriety Program requirements approximately eight times. Dkt. # 12 at ¶ 11; Dkt. # 14-2 at ¶ 3. For each violation, plaintiff was given the minimum punishment available under RCW 36.28A.390, ranging from a warning for the first violation to seven days' imprisonment for the fifth and subsequent violations. *Id.* Plaintiff appeared in court on a violation during the period of incarceration only as the length of his stay extended to five and then seven days. He was never represented by counsel at any of the violation hearings: the first time the City notified counsel of a hearing was following the sixth violation in April 2017.

In November 2016, plaintiff's attorney filed a motion to terminate the programmatic conditions of his release. The matter was not heard until March 21, 2017. Following oral argument, Judge Buzzard denied plaintiff's motion. Although no copy or transcript of the court's order was provided, the City Prosecutor for the City of Centralia provided a declaration regarding its effect and contents, including that Judge Buzzard found that the statute creating the 24/7 Sobriety Program is constitutional and that "probable cause (under RCW 36.38A) and prior offenses (under RCW 10.21.055) supported the use of the 24/7 Program as a condition to Haines' release." Dkt. # 12 at ¶ 12.

Plaintiff's last date of incarceration related to the program was May 22, 2017: he was removed from the program on August 15, 2017. Plaintiff plead guilty to Driving Under the Influence (BAC Refusal) on January 15, 2019.

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 4

1

2

### DISCUSSION

Washington's 24/7 Sobriety Program was created in 2013 "for the purpose of implementing alternatives to incarceration" for those arrested for or convicted of driving under the influence. RCW 36.28A.300. To participate in the program, an arrestee must be "charged with or convicted of" driving under the influence ("DUI") and must be ordered by a court to participate. RCW 36.28A.330(2). "The court may condition any bond or pretrial release upon participation in the 24/7 sobriety program and payment of associated costs and expenses, if available." RCW 36.28A.350. Any officer who has probable cause to believe a participant has violated the terms of the 24/7 Sobriety Program "may immediately take the participant into custody and cause him or her to be held until an appearance before a judge on the next judicial day." RCW 36.28A.390(1). The City of Centralia convenes court only on Tuesdays, with occasional jury trials scheduled on the second and fourth Monday of each month. Dkt. # 12 at ¶ 2. As discussed above, the penalty for violation increased with the number of violations. RCW 36.28A.390(2).

Defendants seek summary judgment on plaintiff's federal constitutional claims because (a) he cannot show a deprivation of his constitutional rights and/or his constitutional rights were waived, (b) his Section 1983 claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), collateral estoppel, and/or the applicable statute of limitations, (c) Chief Nielsen is entitled to qualified immunity, and (d) plaintiff has not shown that the alleged constitutional violations were caused by a policy or practice of the municipality. These arguments are considered below.

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 5

**A. Deprivation of Constitutional Rights**

Section 1983 provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, plaintiff's various pleadings do not identify any specific federal constitutional right that has been violated, but his allegations arguably alleged violations of his Fourth Amendment right to be free from illegal searches, his Fifth Amendment right to due process, and his Sixth Amendment right to counsel. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The second element is not disputed in this case.

**(1) Unreasonable Search and Seizure**

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Defendants argue that the searches at issue - the twice-daily breathalyzer tests - were reasonable because plaintiff consented to them as a condition of his release. The Ninth Circuit has rejected exactly this kind of waiver argument in *U.S. v. Scott*, 450 F.3d 863 (9th Cir. 2006), where a pretrial detainee was required to consent to drug testing and searches as a condition of his pretrial release.

The government may detain an arrestee "to ensure his presence at trial," *Bell v.*

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 6

*Wolfish*, 441 U.S. 520, 536 (1979), and may impose some conditions, such as reasonable bail, before releasing him, *see United States v. Salerno*, 481 U.S. 739, 754 (1987). Many pretrial detainees willingly consent to such conditions, preferring to give up some rights in order to sleep in their own beds while awaiting trial.

It may be tempting to say that such transactions—where a citizen waives certain rights in exchange for a valuable benefit the government is under no duty to grant—are always permissible and, indeed, should be encouraged as contributing to social welfare. After all, Scott's options were only expanded when he was given the choice to waive his Fourth Amendment rights or stay in jail. *Cf. Doyle v. Cont'l Ins. Co.*, 94 U.S. 535, 542 (1877). But our constitutional law has not adopted this philosophy wholesale. The "unconstitutional conditions" doctrine, *cf. Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994), limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary. Government is a monopoly provider of countless services, notably law enforcement, and we live in an age when government influence and control are pervasive in many aspects of our daily lives. Giving the government free rein to grant conditional benefits creates the risk that the government will abuse its power by attaching strings strategically, striking lopsided deals and gradually eroding constitutional protections. Where a constitutional right "functions to preserve spheres of autonomy ... [u]nconstitutional conditions doctrine protects that [sphere] by preventing governmental end-runs around the barriers to direct commands." Kathleen M. Sullivan, Unconstitutional Conditions, 102 Harv. L. Rev. 1413, 1492 (1989); *see generally id.* at 1489–1505; Richard A. Epstein, The Supreme Court, 1987 Term–Foreword: Unconstitutional Conditions, State Power, and the Limits of Consent, 102 Harv. L. Rev. 4, 21–25 (1988).

The doctrine is especially important in the Fourth Amendment context. Under modern Fourth Amendment jurisprudence, whether a search has occurred depends on whether a reasonable expectation of privacy has been violated. *See Katz v. U.S.*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). . . .

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 7

> Pervasively imposing an intrusive search regime as the price of pretrial release, just like imposing such a regime outright, can contribute to the downward ratchet of privacy expectations. While government may sometimes condition benefits on waiver of Fourth Amendment rights—for instance, when dealing with contractors, *see Zap v. U.S.*, 328 U.S. 624, 628 (1946); *Yin v. California*, 95 F.3d 864, 872 (9th Cir. 1996) ("It is clear that a contract may under appropriate circumstances diminish (if not extinguish) legitimate expectations of privacy."), or paying welfare benefits, *see Wyman v. James*, 400 U.S. 309, 317-18 (1971) - its power to do so is not unlimited.
>
> Government employees, for example, do not waive their Fourth Amendment rights simply by accepting a government job; searches of government employees must still be reasonable. *See Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989) (citing *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) (plurality opinion); *id.* at 731 (Scalia, J., concurring in the judgment)). *Von Raab* also forecloses a milder version of the waiver theory, which would hold that an employee keeps his Fourth Amendment rights but makes all searches reasonable through his consent: The employee's assent is merely a relevant factor in determining how strong his expectation of privacy is, *see id.* at 672 n. 2, and thus may contribute to a finding of reasonableness.

*Scott*, 450 F.3d at 865-68 (footnotes omitted). In short, "one who has been released on pretrial bail does not lose his or her Fourth Amendment right to be free of unreasonable seizures . . . . Thus, a pretrial detainee's consent to any search is only valid if the search in question (taking the fact of consent into account) was reasonable." *Scott*, 450 F.3d at 468 (internal citation and quotation marks omitted). *See also U.S. v. Lara*, 815 F.3d 605, 609 (9th Cir. 2016) (finding that probationer's "acceptance of the terms of probation, including suspicionless searches of his person and property, is one factor that bears on the reasonableness of the search, but it is not in itself dispositive.").

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 8

In general, a search or seizure is reasonable only if supported by probable cause. This requirement can be relaxed where "special needs, beyond the normal need for law enforcement,' make insistence on a showing of probable cause "impracticable." *Scott*, 450 F.3d at 868 (citations omitted). Defendants do not argue that searching pretrial releasees by testing them for alcohol serves any special need that is "beyond the normal need for law enforcement." Rather, defendants rely on the more general "totality of the circumstances" approach applied by the Supreme Court of Montana when finding that warrantless breathalyzer tests under a 24/7 Sobriety Program are not *per se* unreasonable for purposes of the Fourth Amendment. *State v. Spady*, 354 P.3d 590, 597-98 (Mont. 2015). Under the totality of circumstances analysis, "[t]he reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *U.S. v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

 (a) Intrusion on Privacy Interests

  "The first factor to be considered is the nature of the privacy interest upon which the search here at issue intrudes. The Fourth Amendment does not protect all subjective expectations of privacy, but only those that society recognizes as 'legitimate.' . . . . What expectations are legitimate varies, of course, with context . . . depending, for example, upon whether the individual asserting the privacy interest is at home, at work, in a car, or in a public park. In addition, the legitimacy of certain privacy expectations vis-à-vis the State may depend upon the individual's legal relationship with the State." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646,

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 9

654 (1995). Having reviewed a number of cases involving conditions of release, including

*Scott*,[3] *Lara*,[4] and *Spady*,[5] the Court finds that plaintiff, who was accused of a crime but

presumed innocent, has the same expectations of privacy as other citizens. There is nothing in

the record to indicate, however, that plaintiff or other citizens would have a particularly

expansive expectation of privacy in a public place like the Centralia Police Department. In *Scott*,

the Ninth Circuit specifically noted, albeit in *dicta*, that where a defendant "is required to report

for drug-testing at a location away from his home," his expectation of privacy is diminished. 450

F.3d at 872, n.10.

---

[3] In *Scott*, the Ninth Circuit evaluated the reasonableness of pretrial release conditions that allowed random drug testing and home searches by peace officers at any time, day or night. In evaluating Scott's privacy interests and the extent of the intrusion, the Court noted that "pretrial releasees are ordinary people who have been accused of a crime but are presumed innocent." 450 F.3d at 871. They are, therefore, generally entitled to the same expectation of privacy as other citizens. In *Scott*, where officers came into Scott's home to demand urine samples, the Ninth Circuit found Scott's expectation of privacy was at its zenith and his assent to release conditions authorizing warrantless searches "was insufficient to eliminate his expectation of privacy in his home." *Id.* at 871-72. The court specifically noted, however, that "[t]he balance usually will be struck differently in cases where the defendant is required to report for drug-testing at a location away from his home." *Id.* at 872, n.10.

[4] In *Lara*, the court determined that Lara's privacy expectations and the extent to which those expectations were invaded depended on several factors specific to the case, "the most important of which are his status as a probationer, the clarity of the conditions of probation, and the nature of the contents of a cell phone." 815 F.3d at 610. The court ultimately concluded that, despite the fact that a probationer has a lower expectation of privacy than a person who has not been convicted of a crime, the ambiguous language of the search condition and the intrusiveness of a cell phone search gave rise to a substantial privacy interest in the cell phone and the data it contained. 815 F.3d at 610-12.

[5] In *Spady*, the court evaluated the reasonableness of the same searches that are at issue in this case, namely the compelled participation in a 24/7 Sobriety Program that required the pretrial releasee to appear for breathalyzer tests twice every day. The court found that an individual taken into police custody has diminished expectations of privacy and that breathalyzer tests administered outside the person's home only minimally impact those diminished privacy interests. 354 P.3d at 598.

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 10

In evaluating the degree to which the breathalyzer tests intrude upon plaintiff's privacy, the Court considers not just where the search occurred, but the character of the intrusion of which plaintiff complains. The Supreme Court has recognized two aspects to the intrusion that must be considered. The first is the method and manner of the testing. In *Acton*, the Supreme Court recognized that the collection of urine samples intrudes upon bodily functions that are traditionally shielded by great privacy, but found that where the normal levels of privacy attained in public bathrooms is maintained, "the privacy interests compromised by the process of obtaining the urine sample are . . . negligible." 515 U.S. at 658. *But see Blomstrom v. Tripp*, 189 Wn.2d 379, 403 (2017) (holding that, in the context of a state-ordered search, urine testing is offensive to personal dignity and destructive of privacy for purposes of Article I, section 7 of the Washington Constitution). Here, plaintiff was required to blow into a device. He does not argue that this function is "private" or that its public performance is degrading or intrusive in any way. The first privacy concern is not, therefore, an issue. The other privacy-invasive aspect of breath analysis "is, of course, the information it discloses concerning the state of the subject's body, and the materials he has ingested." *Acton*, 515 U.S. at 658. In this regard, while it is significant that the breathalyzer tests look only for alcohol use, the compelled production of potentially incriminating information to law enforcement undoubtedly intrudes on the expectation of privacy reasonably held by a citizen who has not been convicted of a crime and is presumed innocent, regardless of the location in which the search occurs.

In the totality of the circumstances presented here, the Court finds that a pretrial detainee's expectation of privacy, while minimally impacted in light of the location, method, and

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 11

1   manner of the testing in this case, suffers a significant invasion when the state conducts repeated,

2   suspicionless searches for potentially incriminating information. That plaintiff was compelled to

3   "agree" to the warrantless searches in order to obtain his release is insufficient to extinguish the

4   expectation that he and other citizens who have not been convicted of a crime are secure from

5   government intrusions, even in public places.[6] The issue, then, is whether the governmental

6   concern at issue "appears important enough to justify the particular search at hand, in light of

7   other factors that show the search to be relatively intrusive upon a genuine expectation of

8   privacy." *Id.* at 661.

9

10              (b) Legitimate Governmental Interests

11          Defendants rely entirely on *Spady* for their governmental interests analysis (Dkt. # 11 at

12   10-11). In *Spady*, the state's interest in compelling a class of arrestees to provide twice-daily

13   breath samples is described as follows:

14

15          No one can dispute that drunk driving is a significant issue in Montana, often
16          resulting in tragic consequences. The State has an important interest in keeping the
            public safe by preventing repeat DUI arrestees from driving while intoxicated. The
17          overarching goal of the 24/7 Sobriety Program is safeguarding the public by
18          reducing the number of intoxicated drivers in Montana. Section 44–4–1202, MCA.

19  _____

20          [6] *See Scott*, 450 F.3d at 867 (rejecting an analytical framework based on an individual's
     subjective expectations of privacy because it leads to results inimical to the protections afforded by the
21   Fourth Amendment:"[I]f the Government were suddenly to announce on nationwide television that all
     homes henceforth would be subject to warrantless entry, individuals thereafter might not in fact entertain
22   any actual expectation of privacy regarding their homes, papers, and effects.... In such circumstances,
     where an individual's subjective expectations had been 'conditioned' by influences alien to
23   well-recognized Fourth Amendment freedoms, those subjective expectations obviously could play no
     meaningful role in ascertaining what the scope of Fourth Amendment protection was. In determining
24   whether a 'legitimate expectation of privacy' existed in such cases, a normative inquiry would be
     proper.") (quoting *Smith v. Maryland*, 442 U.S. 735, 740 n.5 (1979).
25

26

27   ORDER GRANTING IN PART
28   MOTION FOR SUMMARY JUDGMENT - 12

> The program is narrowly designed to test only arrestees who have a prior record of drunk driving offenses, and the twice-daily tests have a strong capacity to deter drunk driving while on pretrial release. Drunk driving presents a substantial and real risk to the public safety of Montanans and the State has a genuine interest in protecting the public from repeat DUI offenders.

354 P.3d at 598. The events giving rise to this case occurred in Washington, however, not Montana. Defendants have not offered evidence regarding the prevalence or significance of drunk driving in Washington, nor do such concerns appear to have been a motivating factor in the legislature's adoption of the 24/7 Sobriety Program. In contrast to *Spady*'s description of the purpose of the Montana program, the Washington legislature created its version of the 24/7 Sobriety Program "for the purpose of implementing alternatives to incarceration" for those arrested for driving under the influence. RCW 36.28A.300. In addition, and in apparent contrast to the Montana program, persons eligible to participate in Washington's 24/7 Sobriety Program include not only those "who have a prior record of drunk driving offenses," but also those who have merely been charged with driving under the influence. RCW 36.28A.330(2).[7]

Wholesale adoption of *Spady's* analysis of Montana's interests in this Washington case is therefore not appropriate. Nor is it necessary to look to the interests of other states: Washington

---

[7] Defendants assert that "[t]he 24/7 sobriety program requires participants to be charged under RCW 46.61.502 (DUI) *and* requires the participant to have been previously convicted of at least one prior conviction under the same." Dkt. # 15 at 6 (emphasis added). No citation is provided, and RCW 36.28A.330(2) is written in the disjunctive: "'Participant' means a person who has been charged with *or* convicted of a violation of RCW 46.61.502 . . . ." (emphasis added). In their motion, defendants acknowledge that Washington's 24/7 Sobriety Program "is a twenty-four hour, seven-day-a-week (including holidays) monitoring program in which a participant who has been either arrested for or convicted of driving under the influence ("DUI") voluntarily submits to blood, breath, urine, or other bodily substance testing . . . ." Dkt. # 11 at 3.

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 13

has clearly identified in its judicial rules of criminal procedures the interests it seeks to promote when imposing conditions on pretrial releasees.[8] Washington starts with the presumption that persons charged with noncapital offenses will be released without conditions pending trial. CrRLJ 3.2. *See also* CrR 3.2 (nearly identical rule for superior courts). Conditions may be imposed, however, if a court finds that release on personal recognizance "will not reasonably assure the accused's appearance, when required, or . . . that there is a likely danger that the accused . . . will commit a violent crime, or . . . will seek to intimidate witnesses, or otherwise unlawfully interfere with the administration of justice." CrRLJ 3.2(a). *See also Blomstrom v. Tripp*, 189 Wn.2d 379, 405-06 (2017) (applicable law does not justify the imposition of a testing condition "because the district court did not find that the petitioners would likely (a) commit a violent crime, (b) intimidate witnesses, or (c) otherwise interfere with the administration of justice, before proceeding to impose conditions under that provision's subheading, CrRLJ 3.2(d)(10).").

In this case, there is no evidence of judicial findings that could support the imposition of conditions on plaintiff's release from custody pending trial. On November 8, 2016, Judge Buzzard signed an "Order Establishing Conditions of Release" that consisted of an "IT IS HEREBY ORDERED" clause followed by a checklist of fifteen conditions from which the

---

[8] "Pretrial release conditions are historically the province of the judicial branch, and rules concerning their deployment have been 'developed and maintained by each county's judiciary.'" *Blomstrom*, 189 Wn.2d at 402 (quoting *Westerman v. Cary*, 125 Wn.2d 277, 291 (1994)).

judge could choose. Dkt. # 12 at 23. There are no factual findings regarding the defendant - in fact, the checked conditions appear to be based on nothing more than the charge against him. The state's interest appears to be little more than a general preference for warrantless searches of persons suspected of DUI. While testing as a condition of pretrial release may be appropriate where justified by legislative or judicial findings (*Scott*, 450 F.3d at 872 n.12), where such findings are missing, the government cannot justify conditions "based merely on the fact of arrest for a particular crime" (*Id*. at 874).

(c) Balancing

On balance, in the totality of the circumstances presented here, searching plaintiff twice a day without probable cause was unreasonable. Although his consent to the testing lessens somewhat plaintiff's expectation of privacy, compelling him to provide potentially incriminating information with no legislative or judicial justification for the testing condition - much less probable cause for any particular test - violated the Fourth Amendment. As discussed in *Scott*, a pretrial releasee's "privacy and liberty interests were far greater than a probationer's" and "the assumption that Scott was more likely to commit crimes than other members of the public, without an individualized determination to that effect, is contradicted by the presumption of innocence". *Scott*, 450 F.3d at 873-74 (footnote omitted). "[I]f a defendant is to be released subject to bail conditions that will help protect the community from the risk of crimes he might commit while on bail, the conditions must be justified by a showing that defendant poses a heightened risk of misbehaving while on bail. The government cannot, as it is trying to do in this case, short-circuit the process by claiming that the arrest itself is sufficient to establish that the

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 15

conditions are required." *Id.* at 874. As applied by the City of Centralia, the alcohol tests violated the Fourth Amendment. Whether the violation ceased when Judge Buzzard made individualized findings in March 2017 is not currently before the Court.

### (2) Due Process

In their motion for summary judgment, defendants conflate plaintiff's Fifth Amendment Due Process claim with the probable cause analysis of the Fourth Amendment, arguing that because they had probable cause to believe plaintiff had violated the conditions of his release as soon as the breathalyzer test was positive, his remand into custody to await a hearing was all the process that was due. Dkt. # 11 at 11. Plaintiff makes clear, however, that his due process claim is based on the allegations that he was jailed without opportunity to be heard, oftentimes released from custody before he could appear before a judicial officer to contest the alleged violations, and never provided the assistance of counsel to appear or argue against incarceration. Dkt. # 14 at 11. Defendants make no reply and have not shown that they are entitled to summary judgment on the Due Process claim.

### (3) Right to Counsel

Defendants acknowledge that criminal defendants have a Sixth Amendment right to counsel when "coping with legal problems or [needing] assistance in meeting his adversary." Dkt. # 11 at 11-12 (quoting *U.S. v. Ash*, 413 U.S. 300, 313 (1973). Nevertheless, defendants argue that they were under no obligation to appoint counsel or notify existing counsel when they "simply placed Plaintiff under arrest for violating the conditions of his pretrial release." Dkt. # 11 at 12. This pronouncement is unaccompanied by any citation to case law.

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 16

> The Sixth Amendment right of the "accused" to assistance of counsel in "all criminal prosecutions" is limited by its terms: "it does not attach until a prosecution is commenced." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991); *see also Moran v. Burbine*, 475 U.S. 412, 430 (1986). We have, for purposes of the right to counsel, pegged commencement to " 'the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment,' " *U.S. v. Gouveia*, 467 U.S. 180, 188 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality opinion)). The rule is not "mere formalism," but a recognition of the point at which "the government has committed itself to prosecute," "the adverse positions of government and defendant have solidified," and the accused "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby, supra*, at 689.

*Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 198 (2008) (footnote omitted). "[A] defendant's ongoing relationship with counsel that is known (or should be known) by the government invokes the Sixth Amendment right to counsel once that right attaches." *U.S. v. Harrison*, 213 F.3d 1206, 1213 (9th Cir. 2000), as amended (June 29, 2000).

In this case, the City repeatedly took plaintiff into custody as punishment for violating the terms and conditions of the 24/7 Sobriety Program. At the same time, his counsel had pending a motion to terminate the programmatic conditions of release. Plaintiff's arrests led to a presumed conviction and immediate punishment for violations of the participation agreement: defendants do not argue that the proceeding was not adversarial simply because it skipped the indictment step. Nor have defendants shown that they were unaware of plaintiff's on-going representative relationship with counsel.

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 17

**B. Affirmative Defenses**

**(1)** *Heck v. Humphrey*

Defendants argue that plaintiff is barred from bringing this action under Section 1983 because it would call into question the findings of Judge Buzzard regarding the constitutionality of the 24/7 Sobriety Program and the need to impose conditions on plaintiff's release. Because those decisions were not the subject of direct appeal and have not been reversed, defendants argue that plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck*, however, was concerned with collateral challenges to an outstanding criminal judgment: "We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." 512 U.S. at 486. A claim that does not call into question the lawfulness of the plaintiff's conviction or continuing confinement, such as a claim that the wrong procedures were used to calculate good-time credits or a claim of abuse of process (*see* 512 U.S. at 482-83 and 485, n.5), is not barred.

In this case, plaintiff's conviction for driving under the influence on November 2, 2016, is unchallenged. Unlike the plaintiffs in *Valdez v. Rosenbaum*, 302 F.3d 1039, 1049 (9th Cir. 2002), and *Lopez v. Skagit Cty. Jail*, 447 F. App'x 807, 808 (9th Cir. 2011), plaintiff is not arguing that he was deprived of the advice of counsel or access to the law library as he attempted to respond to the original charge upon which he was arrested, nor is he arguing that the subsequent DUI conviction is invalid. Rather, plaintiff raises challenges to the lawfulness of

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 18

specific actions, namely the imposition of testing conditions when he was released from pretrial detention and his subsequent arrest and punishment for violations of those conditions without an opportunity to be heard and without access to counsel, which can be determined without impacting or invalidating the DUI conviction or sentence.

### (2) Collateral Estoppel

Defendants argue that plaintiff is collaterally estopped from asserting a facial challenge to the constitutionality of the statute establishing the 24/7 Sobriety Program because the issue was raised in the course of the underlying criminal proceedings and resolved by Judge Buzzard. The Court is unable to determine whether the issues raised before Judge Buzzard are the same as those asserted in this litigation, whether the issues asserted in this litigation were the subject of a final adjudication on the merits, and/or whether collateral estoppel would work an injustice in the circumstances presented here. *See Malland v. Dep't of Ret. Sys.*, 103 Wn.2d 484, 489 (1985). Plaintiff appears to be asserting an as-applied challenge to the way in which the City of Centralia carries out the 24/7 Sobriety Program, not a facial challenge. Judge Buzzard's ruling on the issue is not in the record, making it impossible to tell what was argued or decided. Nor is it clear that the decision was part of the final judgment or what procedural options were available to plaintiff in the context of the criminal adjudication. Defendants have not shown that collateral estoppel applies.

### (3) Statute of Limitations

The parties agree that the statute of limitations for plaintiff's Section 1983 claims is three years. Because this lawsuit was not filed until May 26, 2020, plaintiff is barred from seeking

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 19

damages for events occurring before May 26, 2017. Thus, plaintiff's claims for damages arising

from his incarcerations for violating the terms of the participation agreement and all related

deprivations of counsel are untimely. Because plaintiff remained subject to the twice-per-day

testing until August 15, 2017, his amended claim for damages[9] for the period between May 26,

2017, and August 15, 2017, may proceed.

**C. Qualified Immunity**

Chief Nielsen of the City of Centralia Police Department seeks dismissal of the claims

asserted against him on qualified immunity grounds. The only allegation against Chief Nielsen is

that he "was the chief of the Centralia Police Department during all times pertinent to this

complaint." Plaintiff does not allege that Chief Nielsen administered the breathalyzer test, that

he took plaintiff into custody when the test was positive, or that he was aware that there were no

individualized findings supporting the warrantless testing. Rather, he argues that Chief Nielsen's

knowledge that the Police Department was engaged in testing under the 24/7 Sobriety Program

is enough to impose liability on the head of the department because "the chief is by definition

responsible for seeing that his employees do not violate people's constitutional rights." Dkt. # 14

at 15. As the Court understands it, plaintiff is challenging the 24/7 Sobriety Program as applied

in the City of Centralia. He has neither alleged nor shown that Chief Nielsen was aware that

pretrial detainees were being ordered to participate in the program without the findings necessary

to make the testing reasonable under the Fourth Amendment. Plaintiff has not raised a triable

---

[9] The first iteration of plaintiff's complaint sought damages only for violations of his Fifth and Sixth Amendment rights.

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 20

issue of fact regarding Chief Nielsen's personal involvement in the unlawful searches.

**F. Municipal Liability**

The City of Centralia and the City of Centralia Police Department argue that they did not cause the constitutional tort of which plaintiff complains for purposes of *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978), because they were simply carrying out the participation agreement and Judge Buzzard's orders. Whether plaintiff will be able to show that the form participation agreement he signed while in custody reflects a policy or practice of the municipal defendants and/or whether Judge Buzzard is a policymaker for the municipality is unclear based on the current record. *See McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 784-85 (1997) (in determining whether a constitutional deprivation was caused "by those whose edicts or acts may fairly be said to represent official policy," the "court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'") (quoting *Monell*, 436 U.S. at 694, and *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Defendants have not shown that they are entitled to a summary determination of the issue.

CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED in part. Plaintiff's Section 1983 claim is limited to events occurring after May 26, 2017: his claims for violations of his Fifth and Sixth Amendment rights are therefore barred by the applicable statute of limitations. All claims against Chief Nielsen are dismissed.

1    Dated this 8th day of February, 2021.

2

3                     Robert S. Lasnik
                     United States District Judge

ORDER GRANTING IN PART
MOTION FOR SUMMARY JUDGMENT - 22